**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD HOLDER and ANDRE ROBINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STUDENT TRANSPORTAITON OF AMERICA, INC., and STA OF NEW YORK, INC. d/b/a MID-CITY TRANSIT<br><br>Defendant. | Civil Action No. 7:26-cv-02031<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs, Donald Holder and Andre Robinson, individually and on behalf of all others similarly situated, by their attorneys, Working Solutions Law Firm, PLLC, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

## NATURE OF ACTION

1. This is a collective and class action brought by Lead and Putative Class Representatives Donald Holder and Andre Robinson (the "Representative Plaintiffs" or "Lead Plaintiffs") and other opt-in and/or putative plaintiffs (collectively, "Plaintiffs"), on their own behalf and on behalf of the FLSA collective and proposed Rule 23 class identified below. Plaintiffs and the Putative Collective and Class Members were or are employed by STA of New York, Inc., d/b/a Mid-City Transit ("STA NY") and Student Transportation of America, Inc. ("STA") (together with STA NY, "Defendants") as non-exempt hourly Bus Drivers ("Drivers") and Bus Monitors ("Monitors") in New York.

2. Defendants denied Plaintiffs and the putative Collective and Class overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and

New York Labor Law ("NYLL") § 650 *et seq*., as well as their "gap time" compensation in violation of the NYLL. Defendants did this by requiring Plaintiffs to work off-the-clock during their scheduled shifts, despite engaging them to wait during that time.

3. The putative Collective and Class are similarly situated to the Representative Plaintiffs under Federal Rule of Civil Procedure ("FRCP") 23 and § 216(b) of the FLSA and have suffered the same violations pursuant to Defendants' common policies and practices.

4. The Collective is made up of all persons who are or have been employed by Defendants as Drivers and/or Monitors at any time within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period"), and who were subject to Defendants' unlawful policy of failing to pay overtime premiums for all hours worked over 40 in a given workweek, and/or failing to keep accurate records of hours Plaintiffs actually worked.

5. The Class is made up of all persons who are or have been employed by Defendants as Drivers and/or Monitors within the period of six years prior to this action's filing date (the "Class Period") in the State of New York, and who were subject to Defendants' unlawful policy and/or practice of failing to pay Plaintiffs' gap time compensation, and/or overtime premiums for all hours worked over 40 in a given workweek, failing to keep accurate records of hours Plaintiffs actually worked, and/or failing to provide Plaintiffs with accurate wage statements reflecting all hours, including overtime and gap time hours worked.

6. Plaintiffs seek relief for the Collective under the FLSA and the Class pursuant to the applicable provisions of the NYLL, to remedy the Defendants' failure to pay all wages due, in addition to injunctive relief.

**PARTIES**

7. Individual and Representative Plaintiff Donald Holder is a Driver, and presently and

at all relevant times resides in Middletown, New York. He began working as a Driver at STA NY (doing business as Mid-City Transit) in November 2023 and continues to work there presently.

8. Individual and Representative Plaintiff Andre Robinson is a Monitor, and presently and at all relevant times resides in Middletown, New York. He began working as a Monitor at STA NY (doing business as Mid-City Transit) in or around March 2017 and continues to work there presently.

9. At all relevant times, Plaintiff Holder and Plaintiff Robinson were "employees" within the meaning of all relevant statutes.

10. Mid-City Transit Corporation was acquired by STA in 2010, followed by a formal legal merger of "Mid-City Transit Corporation" into "STA of New York, Inc." on December 31, 2012.

11. Defendant STA NY is a New York corporation with an office in Middletown, New York and a principal executive office at 3349 Hwy 138, Bldg. A, Ste C, Wall, NJ 07719.

12. STA NY lists 122 E. 42nd Street, 18th Floor, New York, NY, 10168 as the address to which the Secretary of State of New York shall mail a copy of any process against the corporation served upon the Secretary of State of New York.

13. Defendant STA is a Canadian corporation that provides transit services throughout Northern America.

14. After STA's acquisition of Mid-City Transit Corp, STA merged Mid-City out of existence by merging it with STA of New York, Inc., even though it continues to do business under the name "Mid-City Transit."

15. STA NY is a New York Corporation with a Principal Executive office located at 3349 Highway 138, Building A, Site C, Wall, NJ, United States, 07719.

16. STA of New York, Inc. is a wholly owned operating subsidiary within the broader STA corporate group.

17. STA Inc. operates through a network of 30+ wholly owned local operating subsidiaries listed in its SEC filings, and STA of New York, Inc. is named as one of those subsidiaries.

18. At all relevant times herein, both Defendants met the definition of an "employer" of Plaintiffs under all applicable statutes, including the FLSA and NYLL, and therefore jointly employed Plaintiffs.

19. The Defendants controlled the work performed by Plaintiffs by setting corporate standards, setting employee policies and procedures, and regulating employee behavior.

20. At all relevant times, Defendants has met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and NYLL §190(3).

21. Upon information and belief, the Defendants maintain control, oversight, and direction over the operations and employment practices, including commonly managed human resources, benefits, and labor functions, for all Drivers.

22. Specifically, STA and STA NY have overlapping personnel and management that are involved in oversight and running day-to-day HR functions at STA NY.

23. For example, SEC filings and corporate disclosures for STA list executives and officers whose responsibilities cover STA's nationwide subsidiaries, including STA of New York, Inc., so those individuals functionally serve both the parent STA entity and STA of New York.

24. At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for commerce within the meaning of the FLSA.

25. Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## JURISDICTION & VENUE

26. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

27. Specifically, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 *et seq.*

28. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

29. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the violations of law described in this Complaint occurred in this district.

30. This Court has personal jurisdiction over Defendants because they routinely transact business in New York.

## WAGE AND HOUR COLLECTIVE AND CLASS ACTION FACTUAL ALLEGATIONS

31. Defendants provide transportation services throughout the United States, including the State of New York.

32. At all times relevant to this action, Defendants have directly employed at least fifty (50) Drivers and Monitors out of their Middletown depot, and hundreds more throughout the state of New York.

### Drivers and Monitors' Duties and Responsibilities

33. Drivers drive a school bus route - picking up and dropping off passengers at established stops on the route.

34. Drivers are responsible for, among other things, conducting pre-trip vehicle inspections to ensure safe operation, conducting post-trip vehicle inspections, attending safety meetings, cleaning buses as necessary to maintain a professional appearance and positive company image.

35. Monitors' main duty is to help keep students (or other passengers) safe and orderly on the bus, especially while the Driver focuses on driving.

36. Monitors are responsible for, among other things, helping students safely board and exit the bus, crossing carefully, and staying out of the "danger zone" around the bus, assisting in emergencies and being aware of emergency procedures, assisting young children with finding seats, buckling seat belts, and staying in assigned seats, addressing misbehavior, bullying, or conflicts, and communicating with stakeholders as needed about safety, behavior, or special instructions.

37. Monitors and Drivers work together as a team, including for example, post-trip tasks, such as basic checks, cleaning up trash, and keeping the bus tidy and safe.

38. Generally, Drivers and Monitors are scheduled for specific driving routes (i.e., their "route").

39. Each route has a different estimated time of completion with times varying based on distance and traffic conditions.

40. Drivers and Monitors are assigned to these routes and tasked with picking up an individual or individuals at a pickup point, dropping off the individual(s) at a drop-off point, and then returning the individual to the initial pickup point.

41. Drivers and Monitors also, as requested or desired, drive for field trips, activity trips and charter runs to transport students and other passengers to and from their destinations.

42. All Drivers begin their workday by reporting to STA NY's Mid-City Transit office building to clock in, retrieve their vehicle, conduct a pre-route bus check, and receive their route information for the day.

43. This is usually thirty (30) minutes before a Driver is expected to begin their route.

44. Monitors also begin their workday by reporting to STA NY's Mid-City Transit office but are not involved in the pre-route bus checks and typically arrive just shortly before beginning the route.

45. Drivers and Monitors then conclude their day by completing a post trip report at the STA NY's Mid-City Transit office, dropping off the vehicle, and clocking out.

46. This is usually thirty (30) minutes after Plaintiffs are expected to have completed their route.

47. As further detailed herein, Defendants did not have an FLSA compliant timekeeping system.

48. Drivers and Monitors were all paid on an hourly basis.

49. Shifts generally consist of on average six (6) to twelve (12) hours of driving time, depending on the route.

50. For example, the Representative Plaintiffs shift begins between 6-6:30am. They clock in at the STA NY Mid-City office, Drivers complete a pre-route check-in, then Drivers and Monitors get into the vehicle and begins driving.

51. The Plaintiffs picks up the passenger(s) and drop them off usually between 8am-9am.

52. The Plaintiffs then, technically, are supposed to have a "break" until they need to return to the drop-off location to pick up the passengers.

53. In some instances, Drivers and Monitors return to the Mid-City office, clock-out, and come back after their break around 12:30pm to go back out to pick up from the drop-off location by around 2pm. This, however, is the exception.

54. In most instances, instead of a bonafide break period, Defendants have instituted a policy of engaging Drivers and Monitors to wait but not paying them for such time.

55. Instead of returning to the office and clocking-out and then back in after a break, Drivers and Monitors are required to stay out with the vehicle at or very near by the drop-off destination.

56. When they are engaged to wait near the drop off destination, Defendants clock them out after drop-off and clock them back in at around the time of pick-up, and Drivers and Monitors are then paid a flat rate of eight (8) hours for the workday ("The Flat Rate Billing Policy") regardless of how many hours they are actually working, including the time they are engaged to wait.

57. Defendants advertise this policy to Drivers and Monitors by claiming that Drivers and Monitors "work" less than 8 hours and are therefore being paid extra.

58. However, this is deceptive because Drivers and Monitors are actually working more hours than reflected on their pay stubs because the time they are being engaged to wait is compensable work time.

59. Defendants' office staff regularly clocks out Drivers during the working period to avoid paying overtime premiums for time worked.

60. Specifically, Drivers are clocked out by the office during the time they spend waiting at the drop off destination.

61. On days that Drivers stay out with the vehicle and wait, they are clocked out by the office shortly after they reach the drop-off point.

62. Drivers are then clocked back in before it is time to begin driving the passenger(s) back to the pick-up point.

63. For example, Representative Plaintiffs begins their workday as usual and arrive at the drop-off destination by 8am, but instead of leaving, they wait nearby there until pickup time at around 2 pm.

64. During the time spent waiting, the Representative Plaintiffs are clocked out by the office at around 9:30am and then clocked back in by the office at 12:30pm.

65. Representative Plaintiffs are then paid for 8 hours of work for the day.

66. The pay stub shows that the Plaintiffs worked six (6) hours; however, the Plaintiffs are working closer to nine (9) hours and thirty (30) minutes and sometimes even more due to traffic.

67. The time spent in or around the vehicle waiting – where they are not free to do what they wish and are confined to the area immediately around the drop off location – is compensable because Drivers are not fully relieved of their related duties during such time and are instead, "engaged to wait."

68. While Drivers are clocked out by STA, they cannot do as they please and are expected to be available and nearby in case of emergencies.

69. For example, if the Drivers and Monitors dropped off at a location in the Town of Greenberg, Westchester County, and wished to get, for example, pizza for lunch in Yonkers, only about 15-20 minutes away, they are prohibited from traveling that far from their drop off location.

70. Upon information and belief, the Defendants have several routes that they bill in this manner that result in unpaid overtime hours each week.

71. When Drivers or Monitors work more than forty hours in a scheduled week, they are entitled to one and one-half times their regular hourly rate of pay for that additional time, as overtime pay.

**Defendant's Unlawful, "Off-The-Clock" Mid-Shift Practices for Drivers and Monitors**

72. Plaintiffs incorporate by reference all the factual allegations made in the preceding paragraphs.

73. Vehicles have GPS signals that Defendants use to monitor Drivers and Monitors.

74. Defendants automatically pay Drivers and Monitors a flat rate whenever the GPS indicates that they stayed and waited near the schools.

75. The time Drivers and Monitors are clocked out but required to wait near the drop-off point is compensable time.

76. Pursuant to Defendants' work rules, during the time waiting for the passengers at the drop-off point, all employees are required to be available for emergencies and cannot use the time as they please.

77. Upon information and belief this flat rate billing policy is becoming increasingly compulsory.

78. The "normal" days where drivers return to the office and receive a proper break where they are free to go wherever they please, so long as they return in time, are rare.

79. Drivers and Monitors are told they are required to remain near the school grounds, in their bus, or within a small specific, restricted area, thus being "engaged to wait."

80. Because Drivers and Monitors freedom of movement is restricted and they cannot use the time for their own personal purposes, this time must be paid.

81. Moreover, the requirement to stay close to the drop-off location is for the benefit of the employer (e.g., to be ready for an emergency, to ensure the driver is present for the next route, or to secure the bus).

82. Drivers and Monitors are not free to go anywhere they please, they are restricted in their movement and in what they can therefore do.

83. It has also been indicated to Lead Plaintiffs by management that this policy saves the company money on "wear and tear and tolls."

84. Despite these explicit restrictions of movement, and the clear advantages to the Company of controlling the Drivers and Monitors whereabouts, Drivers and Monitors are still considered to be "off the clock."

85. Paystubs do not count this waiting time as compensable working hours.

86. Defendants automatically clock Drivers and Monitors out during their shifts, three (3) to four (4) hours a day, at least four (4) to five (5) times a week, resulting in at least twelve (12) hours, and upwards of twenty (20) plus hours of compensable working hours uncounted as time worked per week for Driver and Monitors.

87. Plaintiffs also subsequently received inaccurate pay stubs that indicated that they were "off the clock" during times when they were engaged to wait.

88. By way of example, when Representative Plaintiff Donald Holder stays out with the vehicle, he is working at least nine (9) hours and thirty (30) minutes, but often closer to eleven (11) hours per day and Representative Plaintiff Robinson is working approximately the same, but both are only paid for 8 hours and are only considered to only be "working" for about 6 hours.

89. Lead Plaintiff Holder and Lead Plaintiff Robinson spend almost all their days staying out with the vehicle near the drop-off point in order to be available in the event of an emergency.

90. Lead Plaintiffs are subsequently paid forty (40) hours for the week, and their pay stubs indicate this "working time" was about thirty (30) to thirty-six (36) hours; however, they are working closer to forty-seven (47) to fifty-five (55) hours per week.

91. This results in approximately seven (7) to twenty (20) hours or more of unpaid overtime hours worked per week.

92. For example, the week of January 4, 2026 to January 10, 2026, Representative Plaintiff Robinson worked 6 days. Sunday he worked 1.3 hours straight. The rest of the week—Monday to Friday—he worked routes subject to Defendants' Flat Rate Billing Policy. As such, he clocked in at the office before starting his route (around 6:10am each day) and was subsequently clocked out by Defendants office staff at exactly 9:44am each day. He was then clocked in by the office when he was set to pick up passengers again, which, depending on his route that day, was either 1:38pm or 1:55pm. Mr. Robinson then clocked himself out when he returned to the office at the end of the day. His weekly total hours clocked were 38 hours and 36 minutes. However, he was engaged to wait near his drop-off location, for the Defendants' convenience for 20 hours and 21 minutes that week, all of which were uncompensated, and resulted in both unpaid overtime hours and unpaid straight time hours.

93. Upon information and belief, Drivers and Monitors were and are subject to the same policies and practices that result in significant unpaid overtime for time that Plaintiffs were engaged to wait.

**<u>Defendants Have Knowledge Of The Widespread "Off-The-Clock" Practices</u>**

94. Defendants' knowledge of the widespread "off-the-clock" practices at STA NY was well known at all times relevant to this action.

95. As noted previously the vehicles have GPS systems that indicate to STA NY management when drivers remain near the drop off point with the vehicle.

96. Individuals within the Defendants' office are the ones responsible for clocking Drivers and Monitors in and out during their shifts not the Drivers themselves.

97. All of STA NY's operations are run by a Dispatch Manager who was well-aware of the off-the-clock work.

98. The Dispatch Manager indicated to Representative Plaintiffs that there were several routes that were billed with this flat rate billing policy.

99. The Dispatch Manager indicated to Representative Plaintiffs that the billing policy was intended to save the company "wear and tear and tolls" by having drivers to remain stationed at the drop off point.

100. The Dispatch Manager also indicated that accepting an additional job during this waiting period would be "double dipping" and not allowed.

101. The Dispatch Manager indicated that he is required to respond to emergencies during the period in which he is clocked out and therefore was engaged by Defendants to wait.

102. The amount of overtime due to Plaintiffs can be verified by time records and other documents that were contemporaneously maintained by Defendants.

103. The vehicles have GPS systems that indicate to STA NY personnel when the Drivers and Monitors wait near the drop-off point.

104. Upon information and belief supervisors were under direct orders by upper management not to compensate Drivers or Monitors for their off-the-clock work, even when they complained.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

105. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

106. Defendants employed Plaintiffs during the Collective Period.

107. Defendants classified Plaintiffs and the Collective as nonexempt for the purposes of the FLSA, paying them an hourly wage rather than an annual salary.

108. Upon information and belief, there are at least 40 current and former employees during the Collective Period who are similarly situated to the Lead Plaintiffs and who were similarly denied overtime compensation.

109. Lead Plaintiff Holder represents other employees who were Drivers and is acting on behalf of Defendants' current and former Drivers interests as well as his own interests in bringing this action.

110. Lead Plaintiff Robinson represents other employees who were Monitors and is acting on behalf of Defendants' current and former Monitors interests as well as his own interests in bringing this action.

111. Defendants unlawfully required Lead Plaintiff Holder and all individuals employed as Drivers to wait and stay without providing compensation.

112. Defendants unlawfully required Lead Plaintiff Robinson and all individuals employed as Monitors to wait and stay without providing compensation.

113. At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Lead Plaintiffs and all individuals employed as Drivers and/or Monitors lawful overtime premiums for all hours worked in excess of 40 hours in a work week.

114. Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the following class of persons:

**Proposed Collective:** All individuals employed by Defendants as Drivers and/or Monitors with STA NY and who, at any point during the Collective Period, earned but were not paid lawful FLSA overtime premiums for hours worked over 40 in a work week during the Collective Period based on the practices alleged herein.

115. Specifically, Plaintiffs' proposed Collective is further defined as involving claims for unpaid overtime premium compensation for Defendants' practice of forcing Plaintiffs to work "off-

the-clock" in the middle of their shifts, which they knowingly suffered and permitted, and/or commonly enforced FLSA recordkeeping practice violations which resulted in unpaid wages.

116. As such, Lead Plaintiffs Holder and Robinson and the proposed Collective suffered damages for unpaid earned overtime wages under the FLSA in nearly all, if not all, the weeks they worked during the Collective Period.

117. Defendants were aware, or should have been aware, that the law required them to pay all non-exempt employees, including Lead Plaintiffs Holder and Robinson, and the Proposed Collective, an overtime premium of 1 and ½ times their regular rate of pay for all hours Defendants suffered or permitted them to work in excess of forty (40) per workweek.

118. Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Lead Plaintiff Holder, Lead Plaintiff Robinson, and the proposed Collective.

119. Defendants are liable under the FLSA for failing to properly compensate Lead Plaintiff Holder, Lead Plaintiff Robinson, and the proposed Collective, and as such, notice should be sent to the proposed Collective.

120. There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

121. Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

**FEDERAL RULE OF CIVIL PROCEDURE**
**RULE 23 NEW YORK CLASS ALLEGATIONS**

122. Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

123. Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

**Proposed Class:** All individuals employed by Defendants as Drivers and/or Monitors in New York State who, at any point during the Class Period, earned but were not paid lawful NYLL overtime premiums for hours worked over 40 in a work week, and/or gap-time wages during the Class Period based on the practices alleged herein.

124. Specifically, Plaintiffs' proposed Class is further defined as involving: (i) claims for unpaid overtime and minimum wage compensation for Defendants' practice of forcing Plaintiffs to work "off-the-clock" and without overtime and/or "gap time" compensation during time spent working while nonetheless being off-the-clock which they knowingly suffered and permitted, and/or commonly enforced NYLL recordkeeping practice violations which resulted in unpaid wages; and (ii) claims for wage statement violations for Defendants' failure to provide Plaintiffs' with accurate wage statements on each payday that includes the information required by NYLL §195(3), including the correct number of hours worked during the pay period.

125. Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Lead Plaintiffs and the proposed Class at least one and one-half times the applicable minimum wage for all hours worked over 40 during the Class Period pursuant to the same illegal practices and policies alleged above.

126. Defendants also did not provide the Lead Plaintiffs or putative Class with accurate wage statements that contain an accurate a breakdown of the number of actual hours worked within each pay period as required by the WTPA.

127. Plaintiffs were denied accurate information in their pay statements about their rates of pay and hours worked.

128. By not providing this information in their pay statements Plaintiffs were prevented from identifying and correcting the wage theft, in the form of unpaid overtime, which, as set forth herein, actually occurred during their employment with Defendants.

129. For example, it was difficult, if not impossible, for Plaintiffs to tell when their hours would have put them into overtime pay and how much overtime and/or gap time pay they were denied each pay period.

130. This wage theft was a concrete financial harm that was the downstream consequence of Defendants' failure to provide information required by the WTPA.

131. Because of Defendants' failure to provide accurate wage statements, Plaintiffs do not have an accurate understanding of the overtime pay due and owing for hours worked over 40.

132. Defendants' failure to provide the statutorily required information in the wage statements left the Named Plaintiffs, and all other Drivers and Monitors, unable to determine whether they were being properly paid their wages, and, as a consequence, the Named Plaintiffs and putative Class were not paid all wages required by law.

133. Numerosity: The proposed Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed at least 40 people who satisfy the definition of the proposed Class during the relevant six year Class Period.

134. Typicality: Plaintiffs' claims are typical of those of the proposed Class. Representative Plaintiffs are informed and believe that, like other Drivers and Monitors, the Class Members were subjected to Defendants' policies, practices, programs, procedures, protocols and

plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records and failure to furnish accurate wage statements.

135. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

136. Adequacy: Representative Plaintiffs will fairly and adequately protect the interests of the proposed Class and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

137. Lead Plaintiffs interests are co-extensive with those of the proposed Class that they seek to represent. They are willing and able to fairly represent the proposed Class and to vigorously pursue their similar individual claims in this action.

138. Commonality: Common questions of law and fact exist to all members of the proposed Class and predominate over any questions solely affecting individual members of the proposed Class, including but not limited to:

a. Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over forty (40) in a workweek for those violations stated above;

b. Whether Defendants unlawfully failed to pay lawful "gap time" wages for all hours worked under forty (40) in a workweek for those violations stated above;

c. Whether Defendants unlawfully failed to pay the state statutory minimum wage to members of the proposed Class in violation of the NYLL;

d. Whether those violations were pursuant to a common policy or practice applicable to all members of the Class;

e. Whether Defendants furnished the Class with accurate wage statements on each payday containing the information required by NYLL § 195(3);

f. Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the proposed Class;

g. Whether those violations were pursuant to a common policy or practice applicable to the Class;

h. Whether Defendants employed Plaintiffs and the proposed Class within the meaning of New York law;

i. The proper measure of damages sustained by the proposed Class; and

j. Whether Defendants' actions were "willful."

139. These common questions of law and fact arise from the same course of events, and each member of the Class will make similar legal and factual arguments to prove liability.

140. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

141. The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.

142. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

143. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the proposed Class the wages to which they are entitled. The

damages suffered by the individual proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

144. Plaintiffs intend to send notice to all members of the proposed Class to the extent required by Rule 23. The names and addresses of the proposed Class are available from Defendants.

145. During the Class Period, and upon information and belief, Plaintiffs each worked more than 1 hour of gap time for which they were not paid the lawful straight time wage under either the NYLL and more than 1 hour of overtime-eligible work during the Class and Collective Periods for which they were not paid a lawful overtime premium of time and one half of their regular rate of pay.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Failure to Pay Overtime Compensation in Violation of the FLSA)**

146. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

147. Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiffs' written consent form(s) are attached hereto or otherwise filed with this Court. Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs and such consent forms will be filed with the Court.

148. At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed and/or continue to employ employees, including Plaintiffs, and members of the Collective.

149. At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

150. The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

151. During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective members worked in excess of forty hours per workweek without lawful overtime compensation.

152. Despite the hours worked by Plaintiffs and the Collective members, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and refused to pay them overtime compensation.

153. Plaintiffs were not paid FLSA mandated overtime premiums uniformly and based on the policies and practices articulated above.

154. Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

155. Plaintiffs and all similarly situated employees are victims of uniform and employer-based compensation policies. Upon information and belief, these uniform policies, in violation of the FLSA, have been applied, and continue to be applied, to all Drivers and Monitors, employed by Defendants in New York State.

156. Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective.

157. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

158. Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

159. Due to Defendants' FLSA violations, Plaintiffs and the members of the Collective are entitled to recover from Defendants damages in the amount of their respective unpaid overtime compensation, liquidated damages, attorneys' fees and costs, and interest.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Failure to Pay Overtime Compensation in Violation of the NYLL)**

160. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

161. At all relevant times, Plaintiffs were employees and the Defendants have been their employer within the meaning of the NYLL.

162. The overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

163. Defendants have failed to pay Plaintiffs and the proposed Class the overtime wages to which they were entitled under the New York Labor Law.

164. By Defendants' failure to pay Plaintiffs and the proposed Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated NYLL Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

165. Also, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the proposed Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the Class Period.

166. Due to Defendants' violations of the NYLL, Plaintiffs and the proposed Class are entitled to recover from Defendants all unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Failure to Pay "Gap Time" Wages in Violation of NYLL)**

167. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

168. At all relevant times, Plaintiffs were employees and the Defendants have been their employer within the meaning of the NYLL.

169. The provisions of NYLL Article 19 and its supporting regulations apply to Defendants, and protect Plaintiffs and the Class.

170. Pursuant to the agreed-upon terms of their employment, Defendants were required to pay Plaintiffs and the putative Class a set hourly rate for all hours worked.

171. Defendants failed to pay Plaintiffs and the putative Class Members their agreed-upon hourly wages (i.e. "gap time" or "straight time" wages") to which they were entitled under the NYLL and supporting New York State Department of Labor Regulations.

172. NYLL § 663(1) states: "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled … he or she shall recover in a civil action the amount of any such underpayments…"

173. Through their knowing or intentional failure to pay agreed-upon wages (i.e. "gap time" or "straight time" wages") to Plaintiffs and the Class, Defendants have willfully violated the NYLL, Article §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

174. By Defendants' failure to pay Plaintiffs and the Class their gap time wages, Defendants have willfully violated Article 19, §§ 663 *et seq*. of the NYLL and the supporting New York State Department of Labor Regulations.

175. Due to Defendants' willful violations of the NYLL, Plaintiffs and the proposed Class are entitled to recover from Defendants all unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))**

176. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

177. At all relevant times, Plaintiffs were employees and the Defendants have been their employer within the meaning of the NYLL.

178. The recording keeping provisions of NYLL Article 19 and its supporting regulations apply to Defendants.

179. Defendants did not provide Plaintiffs and members of the Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

180. NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

181. Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to statutory penalties each workweek that Defendant failed to provide them with accurate wage statements, up to a maximum of $5,000.00, plus reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A. That the Court determine that this action may proceed as a Collective Action pursuant to 20 U.S.C. § 216(b);

B. That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

C. That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

D. That Defendants is found to have violated the Fair Labor Standards Act as to Plaintiffs and the Collective;

E. That Defendants violations as described above are found to be willful;

F. That Defendants have failed to make a good faith effort to comply with the FLSA;

G. An award to Plaintiffs and the Collective of damages against Defendants and in favor of Plaintiffs and the Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

H. An award to Plaintiffs and the Collective an additional equal amount as liquidated damages;

I. An award to Plaintiffs and the Class of damages against Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

J. An award Plaintiffs and the Class an additional equal amount as liquidated damages;

K. That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

L. That Plaintiffs' counsel and Lead Plaintiff Holder and Lead Plaintiff Robinson can adequately represent the interests of the class as class counsel and class representative, respectively.

M. An award of reasonable attorneys' fees and costs pursuant to the FLSA, NYLL and/or other applicable law; and

N. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

DATED: March 11, 2026
New York, New York

Rachel M. Haskell, Esq.
Working Solutions Law Firm, PLLC
11 Grand Central East, 16th Floor
New York, New York 10017
646-430-7930 (main)
646-349-2504 (fax)
*Counsel for Plaintiffs and the Putative Collective and Putative Class*